21-1181. Let me know when you're ready. Yeah. Yes. I do too. And the reporter will also let me know when you're ready. Okay. Maybe what we'll do is we're going to switch sides. Let me know when you're ready. Good morning. May it please the court. Judge Pooler. Judge lawyer. Judge Lynch. I represent Luis Garcia and I understand his family is listening in to today's proceedings. And as I've been thinking about this case, how it proceeds, as we look at compassion and release, jurisprudence, I really want to focus on two issues that I think that the court, the district court failed to really look at adequately in terms of the abuse of discretion. And what I want to talk about first is the issue about self-care, and also to talk about the issue, as I call it, a trial penalty or the comparators of disparate impact that I think that the analysis simply just was not done. And then I do want to talk about the government's argument basically saying that vaccinations more or less just shuts down the whole issue. So in talking about the first issue in terms of the, I'm going to start with the self-care issue, what we're really looking at in terms of compassion and release in terms of sort of a pandemic circumstance that we've been living in and will continue to live in, we have a person, Mr. Garcia, who's 63 years old, who presents with medical issues that there is no contest that there's morbid obesity, there's issue with tuberculosis, there's issues with pancreatitis. Clearly, he falls within the CDC's categories of someone we have to monitor and who's more vulnerable to COVID and the various strains. Granted, he has been inoculated, and granted, he did survive COVID when he was at North Lake, but that's not a disqualifier in terms of the analysis. What we're looking at in terms of self-care is that the prison environment itself creates, some people call it a Petri dish, where this is recurring problems. So for instance, inmates are not given the same, obviously, they lack freedom. That's the whole point of prison. But in saying that, so the procedures and the methods that we use to protect ourselves outside of prison are not readily available to them. They have crowded conditions, and I was thinking about how to sort of phrase it in a way that is somewhat colorful. But if you imagine you just basically live in a movie theater that's crowded, or you basically live in a subway that's crowded, and there's no respite from contact, so you have constant lockdowns, you have constant interference with normal life. And then you have a vulnerable inmate who's subjected to these conditions. So I think the analysis was lacking in that regard. The other aspect of what I want to talk about goes to the comparators. Judge Gleeson, which Judge Matsumoto relied on. Excuse me, can I just go back for one moment? I thought that the court independently relied on the 3553A factors. Yes, but there's also incorporation by reference, though. Judge Matsumoto does make reference saying that Judge Gleeson made these findings and Judge Gleeson did this analysis. So we're looking at two judges, in essence, because that's how Judge Matsumoto chose to do the analysis. My question is just, suppose we agree with you that the COVID situation, at least as it affects Mr. Garcia, would be an extraordinary circumstance that could justify release. But the district court then went on to say, as she explicitly does, that even if extraordinary and compelling reasons existed, the 3553A factors counsel against reducing the sentence. Now, then, don't you have to defeat that latter finding as well? I agree with you, Your Honor, I do. And I do think we did it, but the court disagreed. What we pointed out in the analysis, and that's where I go to the trial penalty aspect, I think that's probably the, to me, that's the clearest way to understand it. So we have two people who cooperated and got, I think, 55 months and 66 months. Granted, they cooperated and they get the benefit of cooperation. So in that analysis, and that goes to dangerousness. They're dangerous individuals. Mr. Garcia is a dangerous individual. He gets a sentence of magnitude almost four times as high as those individuals. Granted, they cooperated. But I think that's part of the analysis. So to say that, and it's really entirely lacking, frankly speaking, in the decision, that say he's dangerous, but these people cooperated, obviously they get their benefit, but he can stay there four times the magnitude of time with these vulnerable conditions, with the epidemic that persists and is going to continue to impact individuals. And also in terms of 3553A factors, one would be rehabilitation that we've talked about. But, you know, we affirmed this sentence in the first place, right, over essentially this argument, or this is one of the factors that would be relevant to the decision of whether the sentence was originally reasonable. Now, the fact that it was reasonable then doesn't mean that it's reasonable now. I grant that, that circumstances have changed and one could look at his rehabilitation or other factors and decide that, in fact, this is, it's now appropriate, considering the 3553 factors anew, to grant compassionate release. But with respect to the argument that the sentence was originally unfair because there's a, what you call a trial penalty, isn't that something that it's well established and law district courts are entitled to disregard that, to reject that argument? Because there is a difference between people who cooperate and people who don't. Your Honor, there certainly is tradition and there's decisions on this point. And it's an uphill battle, what I'm arguing. But I do think that... But what is the argument? Is the argument that we should overrule all those cases or is the argument that somehow in the compassionate release context, everything changes with respect to whether it's reasonable to distinguish between people who cooperate and people who don't? I think it's, Your Honor, my argument has to be the latter. Okay, so why is that? Why is it that it is reasonable to send someone away for four times as long as someone who cooperated, who was a participant in the same conduct? That that is a reasonable thing to do and it's appropriately done in weighing the 3553A factors. Why is that set of policy issues, arguments back and forth, which are reasonable arguments on both sides, why is that different in the compassionate release context? Why is that different? I think it's different because the statute makes it different. By giving district courts this availability, we know that this statute didn't exist in this manner a number of years ago. And so as we look at Brooker and we look at really the wide latitude as we build an area of jurisprudence, I think that's where we're at, Your Honor, that this is an area that there's no limitation at this point. I don't think anyone's saying there's a limitation, right? The judge didn't say, you know, I'm not allowed to do anything. She said, weighing the sentence as it was and as it is, I think he ought to stay in prison. And if the argument is made, no, because these cooperators got off and the judge said, I don't accept that as an argument. Why? That's not saying the judge doesn't recognize her discretion. That's exercising the discretion in a particular way. And, you know, I'm just trying to grapple with what is it that makes a factor that is reasonable to consider in deciding how long somebody should be imprisoned for stops being reasonable 10 years later when the argument really is just about is it fair to hold lack of cooperation against somebody? As we look at this area of jurisprudence, Your Honor, it's clear, and I think the Court's saying that there's the authority there. So the issue of whether or not is this an abuse of discretion, I think that's how I'm interpreting the question. Why is that an abuse of discretion to rely on a factor that judges rely on all the time in imposing sentences, in evaluating the fairness of sentences? If we still had a parole system and you went for a parole board and said, well, look, he's kind of rehabilitated himself. That's a good argument for parole. And besides, his original sentence wasn't fair because other people cooperated and got a less good sentence. Wouldn't the parole commission be able to say, well, okay, I'll consider your first argument, but I'm not buying the second thing. I mean, that's because it's part of the sentencing system that's, you know, people get a break for cooperating. He didn't get that break because he didn't cooperate. Well, I think there's a couple things in terms of the setting. You know, the irony is that, you know, the trial penalty that we talk about, you know, Judge Gleeson talks about it now as an advocate and that there was a realignment of even his own thinking about, you know, the sentences that were imposed when judges, you know, more or less were following, you know, their sort of residual effects of guidelines. We have, you know, the issue, we have the transformation of 924C, you know, in terms of stacking. Judges are looking at sentences. Now, I'm not saying this is an uphill battle, but clearly, you know, as we agree, it's something the court can consider. So when I'm, you know, so in saying that, I think in terms of my argument in advocacy, I think it's, as defense counsel, I have to point out what I think is, what I think is an unfair sentence in and of itself, in this first instance. And one method is to look at comparators. So that's what I've done. Okay. But then I also want to just talk just briefly. I know I'm over my time. But, you know, there is, we've talked about rehabilitation. And we did talk about some of the decisions, like so Lubbock, the case that the judge talked about. I mean, Mr. Garcia has done about 50% of his time. And the comparators that she used were people who are less like 15% or 20%. So in balance, it's our position that this was an abuse of discretion. Thank you, Your Honors. Unless there's other questions, I have reserved. Yes. So we'll hear from the government. Mr. Proctor. Thank you, Your Honor. May it please the court, Douglas Proctor for the United States. I represented the government at trial below in the subsequent proceedings. Judge Matsumoto did not abuse her discretion, either, in finding that the defendant had not met his burden of showing extraordinary and compelling reasons for release, and independently that the section 3553A factors did not warrant. Mr. Proctor, may I ask you a question? Yes, of course. About the first prong of that, the extraordinary and compelling reasons. So the district court acknowledged that Mr. Garcia had a history of medical illnesses and presently has some conditions that place him at a heightened risk from COVID-19. Close quote. Why wasn't that enough to show extraordinary and compelling reasons for release? Understanding that there may be an independent basis to deny the motion for compassionate release, but why isn't that enough to show extraordinary and compelling reasons? Because the district court is not required to say that simply because a medical condition that a defendant has is something that falls on the CDC's list of conditions that may increase the severity of illness resulting from COVID. That alone doesn't automatically establish an extraordinary and compelling condition for release. That's why we vest the district courts with discretion to make that determination. And what Judge Matsumoto did was she delved into the medical records that were attached to Mr. Garcia's admission, and she found that even though he did, in fact, have some conditions, like you said, Judge Laurier, that were on the CDC list, that those conditions were well controlled, that he was stable, that he was not in acute distress, and that the prison facility appeared to be providing adequate medical care. And in light of that, she found that it didn't constitute extraordinary and compelling conditions. In addition, Judge Laurier, the defendant had now been vaccinated in, I believe it was March of 2020, I'm sorry, May of 2021. He's also now received a booster in February of 2022, and if the court- That just reduces the risk, okay. And so additional courts have said, though to be fair, not this one, that the existence of a vaccine and the fact that a defendant has the vaccine and the booster is itself a reason to deny a compassionate use application or to find that a defendant doesn't meet extraordinary and compelling reasons because the existence of the vaccine and the fact that the defendant has received it lessens the likelihood of a significant risk from getting COVID-19. So turning back to Judge Lynch's question on the 35-53-A factors, that is, of course, an independent basis on which to affirm the lower court's decision and not only Judge Matsumoto but also Judge Gleeson before her believed that this sentence, this 17-and-a-half-year sentence for a defendant who laundered millions of dollars for some of the most dangerous narcotics trafficking drug cartels in the world was appropriate to the question of the 17-and-a-half-year sentence. Judge Gleeson, who- So, counsel, can I ask a question? The FIRST STEP Act, which reduced some sentences related to drugs, did not change the fraud guidelines in terms of dollars, did it? That is correct. Thank you. And Judge Gleeson, at the time, was actually one of the leading advocates of sentencing reform, arguing in both fraud cases and in drug cases that the guideline significantly overstated- I'm sorry, that the amount of the loss in a fraud case or the amount of drugs in a drug case significantly overstated the severity of the crime. But in this case, he found that the money laundering guideline was entirely appropriate for this defendant, and Judge Matsumoto reviewed that, and she agreed with Judge Gleeson- They haven't been changed by any congressional act, the fraud guidelines, the amount of dollars. They haven't been changed, isn't that correct? They have been revised over time, but not since this decision. I don't believe they've changed since this decision. I don't think they have. And in fact, Judge Lynch referenced this court. In fact, Judge Lynch, if you recall, you were on the panel, and Judge Pooler, you were as well, that affirmed this sentence as subjectively reasonable. And now, while it is certainly the case that a court could now rebalance the factors under 3553A in light of the COVID pandemic, there's certainly no obligation for the district court to do so, and it's not an abuse of Judge Matsumoto's discretion for her to decline to do that, even independent from finding any extraordinary and compelling reason for this. So unless the panel has any questions, I will rest on the brief. Thank you. Mr. Houston? Thank you. Mr. Houston, this sentence is driven by the amount of money that Mr. Garcia laundered or whatever. Isn't it the amount of money? Isn't that what his sentence was, 17 and a half years? It was driven by that amount, Your Honor. And that hasn't changed, really? No, that hasn't. What we've seen in terms of advocates who are looking at sentencing reform, and I did put these citations in this argument to Judge Matsumoto, the ABA has the shadow guidelines, and there's been criticism even in this court about it to be 1.1 in terms of overstating the seriousness. In any event, with inflation, they probably understate the value of money, but we don't have to go there. Given these times, Your Honor, I have to credit, that's an interesting way of looking at it. But in saying that, what I think what they're really getting at Very kind of you, Mr. Houston. What I think what we're getting at in terms of sentencing reform, and again, compassionate release, it's sort of in the word, it's in the title, that we're asking judges to take second looks at cases, and I know we are disturbing precedent, but that's sort of the job of a defense lawyer oftentimes, to be the disruptor and ask those type of questions. But so looking at that aspect, the overstatement in terms of culpability, and so what I'm just saying in terms of comparators is that here, these people who cooperated, they had their sentences, but here we are many years later, and Mr. Garcia has these health issues, and you can look at this and say we can reach a fair outcome, and he can come out now, and he should come out because of the vulnerabilities that he has, and that's an apt and correct way to apply the compassionate release law, and also looking at the criticism of the ABA, in terms of the ABA's criticism, and the shadow guidelines with respect to 2B1.1, saying overstating, yes, he did transfer money. That was his role in this, and in the record, there was mention that he was maybe involved in maybe one or two issues in terms of narcotics sales or distribution. But that's to overstate looking at that past. He was found guilty, and no one's disputing that. But what we're looking at now is here he is now as a 63-year-old man, in a pandemic, basically existence, in a jail where he's vulnerable, and he's had cancer in the pancreas, colon. He's had tuberculosis. He's a person who's vulnerable, and as the virus progresses, that's something to look at. But compassionate release isn't just about COVID-19. I mean, it's just a quirk of history that that hit us at the same time compassionate release hit us. So it's way of, you know, we're making the analysis now. So I'd frankly be here even if there wasn't, you know, if I could see myself in this circumstance, regardless of COVID-19, saying that we should have compassionate release for a defendant like Mr. Garcia, given his age and the health risk. What purpose are we really serving in terms of, you know, his individual deterrence, general deterrence? We know he's going to be deported. He's not going to be in this country. He's an older man, you know, and he's had a significant amount of time in jail. You know, this is not someone who simply, you know, was in and out. So I think, you know, it's fair for us to look at it this way. So I appreciate, you know, my time here, and I appreciate advocating on his behalf. Mr. Houston, one of the things that I tried to do as chair of one of the judicial conference committees was to ensure that every person who requested, who was in federal prison, who requested compassionate release got counsel. And so I thank you because I failed in that endeavor. But I think this presentation tells me that the judicial conference should have adopted my recommendation. So thank you. Thank you. Everyone have a good weekend. Stay safe. We'll reserve the decision.